UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSE MARY KEMP,

      Plaintiff,

V                                 Case No:  11-14224

                                      Honorable Victoria A. Roberts

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____/

## ORDER ACCEPTING REPORT AND RECOMMENDATION AND REMANDING CASE

### I.  INTRODUCTION

This matter is before the Court on the parties' cross-motions for summary judgment. Magistrate Judge Michael Hluchaniuk recommends that the Court grant Plaintiff's motion and deny Defendant's motion.

The Court **ACCEPTS** this recommendation and **GRANTS** Plaintiff's motion. The case is **REMANDED** to the Administrative Law Judge ("ALJ") for further proceedings consistent with this opinion.

### II.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Rose Mary Kemp was forty-nine-years-old at the time of the most recent administrative hearing. Kemp seeks disability benefits from May 1, 2000 forward, due to depression, carpal tunnel syndrome, and pain in her back and legs. She alleges these conditions prevent her from engaging in substantial gainful activity. Kemp has a high-school education. Her relevant work history included approximately three years as a housekeeper.

1

Kemp's application for supplemental security income ("SSI") was denied by the Commissioner on October 30, 2007.

On November 24, 2009, Kemp appeared with counsel before ALJ James N. Gramenos, who considered the denial of benefits *de novo.* The ALJ denied benefits, concluding that Kemp could perform a significant number of jobs available in the national economy, and was, therefore, not disabled.

The Appeals Counsel denied Kemp's request for review. The ALJ's decision became the final decision of the Commissioner.

On September 26, 2011, Kemp filed suit seeking judicial review of the Commissioner's decision. On February 6, 2013, Magistrate Judge Hluchaniuk recommended that the Commissioner's decision be reversed and the case remanded. The Commissioner timely objected.

### III. STANDARD OF REVIEW

The Court will affirm the Commissioner's decision "if it is supported by substantial evidence and if the Commissioner applied the correct legal criteria." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007) (citing 42 U.S.C. § 405(g)). Substantial evidence is "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

However, while substantial evidence might otherwise support the Commissioner's decision, that decision "will not be upheld where the [agency] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial

2

right." *Bowen,* 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004)).

### IV. ARGUMENT

Under Title XVI of the Social Security Act, individuals may obtain benefits through the SSI Program. 42 U.S.C. §§ 1381 *et seq;* 20 C.F.R. §§ 416.101 *et seq.* The SSI benefit program exists to ensure "a minimum level of income for people" who are elderly, blind, or have a disability. 20 C.F.R. § 416.110 (West 2013). "Disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 416.905(a).

The Social Security Administration uses a "five-step sequential evaluation process" to determine if a claimant is disabled and eligible for benefits. *Id.* § 404.1520. At step one, Plaintiff must prove "she is not currently engaged in 'substantial gainful activity[.]'" *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2011) (quoting *Abbot v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. § 404.1520(b). At step two, Plaintiff must prove she has a "'severe impairment.'" *Id;* § 404.1520(c). At step three, "if [P]laintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, [P]laintiff is presumed to be disabled . . . ." *Id;* 20 C.F.R. § 404.1520(d). At step four, "if the [P]laintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled." *Id.* Finally, at step five, "even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled." *Id.* (quoting *Abbott,* 905 F.2d at 923).

The claimant has the burden of proof through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). If the Plaintiff carries her burden, at step five "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

## A. Administrative Record

The medical evidence and Kemp's testimony contained in the administrative record establish that Kemp has a history of physical and mental health limitations. Kemp's physical limitations were addressed by her treating orthopedic physician, Dr. J. Alan Robertson.

Her treatment with Dr. Robertson began January 9, 2006 following a car accident. (Tr. at 291). Dr. Robertson treated Kemp until June 2, 2008. Over the course, his records indicate a progression of physical limitations – including decreased range of motion and physical weakness. (Tr. at 291-377). Additionally, Dr. Robertson provided Kemp with multiple different prescriptions to help manage her pain and function. (*Id.*).

Dr. Robertson treated Kemp primarily for "Stage II Hypertension, Psychological Compromise, most likely Dysthymia and Anxiety, and Lumbar Dysfunction (L4-5 intervertebral disc disruption with stenosis)." (Tr. at 291). Kemp's complaints of lower-back pain and leg pain led to Dr. Robertson's opinion that she should "avoid any activity which would place any type of stress on her lower back." (Tr. at 292). That caution was repeated throughout Dr. Robertson's records.

Beginning January 2008 until Dr. Robertson stopped treating Kemp, his records indicate Kemps' prognosis as "poor." (Tr. at 302). He also suggested that Kemp was "an appropriate candidate for provocative discography – CT investigation with probable decompression [and]

fusion to follow…" (Tr. at 301). Additionally, Dr. Robertson believed that Kemps L4-5 disc was desiccated and that her pain and the imaging studies indicated a "high-intensity zone consistent with an annular tear." (Tr. at 301).

On October 17, 2007, the Commissioner referred Kemp for a physical medical assessment conducted by Dr. V. Dang-Vu. (Tr. at 250). Dr. Dang-Vu examined the MRI results provided to him — and after conducting a physical examination — opined that Kemp was "probably exaggerating her lower back problems." (Tr. at 251). Dr. Dang-Vu further concluded that "the physical examination did not show any significant abnormalities and the complaints of pain and discomfort is (sic) out of proportion to the clinical findings." (*Id.*).

Additionally, a physician employed by the state agency reviewed Dr. Dang-Vu's assessment and noted that Kemp had received conservative treatment and that her disc bulge was "insignificant." (Tr. at 264). The state physician advised that Kemp could do medium work (involving lifting up to 50 pounds occasionally) with no postural limitations, but with limitation on fingering and feeling due to carpal tunnel syndrome. (Tr. at 264-66).

### B. ALJ's Findings

On November 24, 2009, the ALJ held a hearing on Kemp's disability claim. The ALJ took testimony from Kemp and Annette Holder, a vocational expert ("VE"). Kemp was represented by counsel. The ALJ concluded that Kemp was not disabled within the meaning of the Social Security Act and that she was not entitled to benefits. The ALJ conducted the five-step sequential analysis.

 At step one, the ALJ found that Kemp had not engaged in substantial gainful activity since July 24, 2007. (Tr. at 16). At step two, the ALJ found that Kemp suffered various severe

5

impairments, including: degenerative disc disease of the lumbar spine, hypertension, obesity, bipolar disorder, and recurrent depression. (*Id.*)

At step two, the ALJ noted that he considered all of the medical exhibits in the record. (*Id.*). He highlighted information from a radiology report in 2006, EMG and nerve conduction studies from July 2007, and simple height and weight observations by Dr. Dang-Vu. (*Id.*). No other findings from any doctor were noted.

At step three, the ALJ found no evidence that Kemp's combination of impairments met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 19).

Specifically, the ALJ gave a detailed account of his decision regarding Kemp's mental health limitation. However, he gave little or no information on her physical limitations (Tr. at 22). What little detail the ALJ gave to Kemp's physical limitations was reserved, primarily, to the observations of Dr. Dang-Vu. (*Id.*).

The ALJ never mentions Dr. Robertson by name. Instead, he referred to Dr. Robertson as "a chiropractor paid by Farmers Insurance." (*Id.*). The ALJ also failed to note that Dr. Robertson was Kemp's treating physician and provided erroneous dates for Kemp's treatment period — indicating that treatment ended in January 7, 2008, instead of June 2, 2008. (*Id.*). The ALJ noted only that the multiple visits with the chiropractor resulted in an opinion to "avoid any activity that would place any type of stress upon her lower back." (*Id.*). Furthermore,  the ALJ gave no information as to what weight, if any, he gave to Dr. Robertson's opinion and provided no additional explanation.

At step four, the ALJ found that Kemp had no past relevant work history. (*Id.*) And at step five, the ALJ concluded that Kemp was not disabled; he denied benefits because Kemp

6

could performm a significant number of jobs available in the national economy. (Tr. at 23). He found that based on Kemp's residual functional capacity ("RFC"), she could perform unskilled work with certain exertional levels—such as work as a general office clerk, bench-work assembler, and sorter. (*Id.*). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Kemp's request for review on August 24, 2011. 20 C.F.R. § 404.981.

### C.  Plaintiff's Claim of Error

Kemp's sole claim of error is that the ALJ failed to recognize Dr. Robertson as her treating physician and failed to accord Dr. Robertson's opinion the proper weight required under 20 C.F.R. § 404.1527. Additionally, she says the ALJ failed to provide any explanation as to why Dr. Robertson's opinion was not considered under § 404.1527.

### D.  Magistrate Judge's Recommendation

The Magistrate Judge recommends that the Court grant Plaintiff's Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment. The Magistrate Judge concluded that the Commissioner committed reversible error when he failed to follow the treating physician rules.

The Magistrate Judge notes that the parties do not disagree that Dr. Robertson is a treating physician or that "the ALJ erred by not following the treating physician rules." But, he disagrees with the Commissioner's contention that it was harmless error. He concluded that "[t]his is not the typical debate about whether the ALJ should have given the physician's opinion 'controlling weight' or failed to give good reasons for giving it less than controlling weight." Instead, "it is entirely speculative what, if any, weight or consideration" was given to Dr.

Robertson. The Magistrate Judge found the ALJ's conclusions "wholly inadequate under the [Commissioner's] regulations."

### E.  Commissioner's Objections

The Commissioner asks the Court to reject the Magistrate Judge's recommendation and grant its motion for summary judgment. The Commissioner contends that the failure to explicitly acknowledge Dr. Robertson as a treating physician and to give his opinion controlling weight was harmless error because the RFC implicitly gave extensive weight to Dr. Robertson's opinion.

## V.  ANALYSIS

### A.  The ALJ Failed to Apply the Treating Physician Rules

The Court agrees with the Magistrate Judge; the ALJ erred by not applying the proper legal standard in evaluating Dr. Robertson's opinion.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009). Under the treating physician rule, the ALJ must "give greater deference" to a treating physician's opinion than to a non-treating physician's opinion. *Id.* This is because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)).

The required rule of giving a treating physician's opinion controlling weight exists when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques" and is "not inconsistent with the other substantial evidence in" the record. *Id.* (quoting § 404.1527(c)(2)).

However, when an ALJ does not give controlling weight to a treating physician's opinion, the ALJ must explicitly consider certain factors: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406 (citing *Wilson,* 378 F.3d at 544); § 404.1527(c)(2).

Furthermore, "the regulations require the ALJ to 'always give good reasons . . . for the weight' given to the claimant's treating source's opinion." *Id.* (citing § 404.1527(c)(2)). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).

These requirements exist to "'ensur[e] that each denied claimant receives fair process[.]'" *Id.* (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)). Failing to provide reasons for minimizing a treating physician's opinion and what weight those opinions are given "*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record." *Id.* (quoting *Rogers,* 486 F.3d at 243) (emphasis in original). Such an omission constitutes reversible error. *Wilson,* 378 F.3d at 544.

It is uncontested that the ALJ failed to give any reasoning associated with Dr. Robertson's opinion. Given the lack of specificity -- and the factual errors -- in the ALJ's opinion, it is unknown exactly what role, if any, Dr. Robertson's opinion played in forming the

9

ALJ's opinion. Also, even if it is assumed that the ALJ rejected Dr. Robertson's opinion, the ALJ failed to weigh the required factors or give a good reasons for not doing so. Overall, the ALJ's opinion falls short of what is required under the Commissioner's regulations.

### B.  Commissioner's Objections Fail

The Commissioner relies on two cases to support its objections that the ALJ's error was harmless. Neither case applies.

First, contrary to the Commissioner's understanding, *Wilson v. Comm'r of Soc. Sec.,* does not stand for the proposition that it is harmless error when an ALJ fails to give proper weight to a treating physician opinion when the RFC includes limitations consistent with the physician's opinion. The *Wilson* Court, summarizing the holding in *Heston v. Comm'r of Soc. Sec.,* stated: "There was no reason to remand the case because, wittingly or not, the ALJ attributed to the claimant limitations consistent with those identified by the treating physician." *Wilson,* 578 F.3d at 547-48 (citing *Heston,* 245 F.3d 528, 536 (6th Cir. 2001)). As the Magistrate Judge correctly observes, the exception cited by the Commissioner comes from *Heston.*

In *Heston,* the ALJ did not specify any reasons for failing to consider the claimant's treating physician's opinion. *Heston,* 245 F.3d 528, 536 (6th Cir. 2001). However, that failure was irrelevant for three reasons: (1) the treating physician's report was based on past medical history prior to the claimant's period of disability; (2) the physician relied on old information and his opinion was not based on objective conclusions; and (3) the vocational expert's testimony cited limitations consistent with the treating physician's opinion. *Id.*

None of those facts applies here. Dr. Robertson evaluated Kemp during her period of disability. Also, Dr. Robertson's opinion was that Kemp's lower-back limitations were severe enough that she should not put any stress on her lower back. Dr. Robertson's opinion was that

Kemp was unable to work. None of those findings was implicitly recognized by the ALJ's conclusion that Kemp was not disabled. Therefore, *Heston* does not apply.

The Commissioner relies on *Wilson* for two additional exceptions. These exceptions may exist when "a treating source's opinion is so patently deficient that the Commissioner could not" consider it; or, where the Commissioner's conclusion is consistent with the spirit of the "procedural safeguard" under § 404.1527(c)(2). *Wilson,* 378 F.3d at 547.

Neither exception applies. The ALJ failed to articulate why he did or did not consider Dr. Robertson's opinion. Because no reasoning is available, "the ALJ's failure to follow the [Commissioner's] procedural rule does not qualify as harmless error where we cannot engage in 'meaningful review' of the ALJ's decision." *Blakley,* 581 F.3d at 409 (quoting *Wilson,* 378 F.3d at 544).

The Commissioner's objections fail.

### C.  Plaintiff's Request for the ALJ's Recusal is Untimely

Kemp requests that the Court instruct the Appeals Council to assign a new ALJ if the case is remanded. She believes the ALJ is biased against here and, therefore, any remand would be irrelevant.  This issue is raised for the first time in Kemp's response brief. Because Kemp did not raise it in her merits brief, it is untimely and is deemed waived. *See Swain v. Comm'r of Soc. Sec.*, 379 Fed. App'x. 512, 517-518 (6th Cir. 2010).

### VI. CONCLUSION

The Court **ACCEPTS** the Magistrate Judge's recommendation; **GRANTS** Plaintiff's motion for summary judgment; and, **REMANDS** the case for reconsideration consistent with this opinion.

**IT IS ORDERED.**

  /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: 3/28/13

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 28, 2013.

S/Linda Vertriest
Deputy Clerk